IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WILLIAM FRANK PERRY, JR.,

    Petitioner,

v.                                                                  No. 1:21-cv-01200-JDB-jay
                                                                    Re:  1:19-cr-10110-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING § 2255 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

*INTRODUCTION*

In December 2021, the Petitioner, William Frank Perry, Jr., Bureau of Prisons register

number 12429-076, filed a pro se motion to vacate, set aside, or correct his sentence pursuant to

28 U.S.C. § 2255 (the "Petition").  (Docket Entry ("D.E.") 1.)[1]  The Petition also seeks a hearing

and appointment of counsel.  The Government has filed an answer in opposition, along with the

affidavit of trial counsel (D.E. 9), and Perry has replied (D.E. 10).

*BACKGROUND*

Pursuant to a judgment entered January 28, 2016, Petitioner was sentenced to thirty

months' imprisonment, to be followed by three years of supervised release, upon a guilty plea to

distribution of marijuana, attempt to distribute and possess, and possession of marijuana with intent

to distribute in violation of 21 U.S.C. § 841(b)(1)(D).  (*United States v. Perry*, Case No. 1:15-cr-

10001-JDB-12 (W.D. Tenn.) (the "15-10001 Case"), D.E. 502.)  During the pendency of the 15-

---

[1]Record citations are to documents filed in the instant action, unless otherwise indicated.

10001 Case, he was represented by Attorney Robert Thomas.  (*Id.*, D.E. 41.)  Following movant's

release from prison and a year into his supervised release period, his probation officer filed a

petition for revocation of his supervised release and a warrant was issued for his arrest.  (*Id.*, D.E.

821-22.)

> According to the United States Probation Office,
>
> [O]n December 11, 2018, officers with the FBI Safe Streets Task Force, Dyersburg[, Tennessee,] Police Department and the United States Marshals Service were tasked with executing [the] arrest warrant for William Perry for violating conditions of his supervised release.
>
> As the officers pulled into the driveway of William Perry's residence, they noticed that an individual was getting in a vehicle.  The officers identified that driver as Catrina Johnson, William Perry's sister.  Ms. Johnson was on the phone with William Perry.  An officer spoke with William Perry and advised him to come to his residence.  When he arrived, he was taken into custody.
>
> Agents went to speak with Ms. Johnson and to further investigate the vehicle.  They observed a black backpack in the front passenger side floorboard.  Ms. Johnson was questioned as to illegal items in the vehicle and her answers were described as "vague and deceptive."  She denied ownership of the backpack or any knowledge of its contents.
>
> A search of the backpack revealed two vacuum sealed bags [of marijuana, as well as small amounts of other drugs and personal items.].
>
> *          *          *
>
> William Perry agreed to speak with investigators and admitted that the backpack belonged to him and that he asked Ms. Johnson to retrieve it for him.  The defendant gave investigators accurate amounts of the illegal drugs he possessed.

(*United States v. Perry*, Case No. 1:19-cr-10110-JDB-1 (W.D. Tenn.), D.E. 41 ¶¶ 6-9, 11 (bolding

omitted).)  FPD Jawara Griffin was appointed to represent Perry in the supervised release violation

proceeding and a hearing was conducted on January 15, 2019, at which the Court heard testimony

from Perry's probation officer and Dyersburg Police Department Detective Mason McDowell.

2

(15-10001 Case, D.E. 827, 837.)  In a judgment entered January 16, 2019, Perry's supervised

release was revoked, and he was sentenced to twenty-two months' incarceration.

As a result of the December 2018 arrest, a federal grand jury returned a multi-count

indictment against the Defendant[2] in September 2019, charging him with possessing marijuana

and marijuana concentrates (Count 1), methamphetamine (Count 2), and cocaine (Count 3) with

intent to distribute in violation of 21 U.S.C. § 841(a)(1).  (*Perry*, Case No. 1:19-cr-10110-JDB-1

(the "Underlying Case"), D.E. 2.)  On October 3, 2019, FPD Griffin again appeared as counsel on

his behalf.  (*Id.*, D.E. 8.)  Defendant pleaded guilty to all counts in February 2020 without a written

plea agreement.  (*Id.*, D.E. 23.)

Pursuant to the Presentence Investigation Report ("PSR"), prepared June 18, 2020,

Defendant was classified as a career offender, which is defined by the United States Sentencing

Guidelines (the "Guidelines" or "U.S.S.G.") as one who has "at least two prior felony convictions

of either a crime of violence or a controlled substance offense."  (*Id.*, D.E. 41 ¶ 23 (citing U.S.S.G.

§ 4B1.1(b)(3).)  Defendant's predicate offenses were identified as possession with intent to

distribute cocaine in 1990 (federal) (*United States v. Perry*, Case No. 2:90-cr-20083-SHM-6)

(W.D. Tenn.) (Underlying Case, ¶ 33); unlawful possession of marijuana with intent to

manufacture, deliver, or sell in 2012 (Tennessee) (*id.* ¶ 34); and the marijuana offenses outlined

above in the 15-10001 Case (*id. ¶* 35).  These convictions raised Perry's Guidelines range from

thirty to thirty-seven months to 151-188 months.  (*See id.*, D.E. 59 at PageID 199-200.)  At

sentencing in October 2020, FPD Griffin made no objection to application of the enhancement,

but did ask for a below-the-Guidelines sentence of sixty months, which the Court rejected.  (*Id.*,

---

[2]The Court will refer to Perry as the "Defendant" in its discussion of the criminal matter
that underlies the Petition.

D.E. 42; *id.*, D.E. 55 at PageID 150-57, 172.)  The undersigned sentenced Defendant to a total

term of 151 months' imprisonment.  (*Id.*, D.E. 52.)  The sentence was affirmed on appeal.  (D.E.

59.)

*LEGAL STANDARDS APPLICABLE TO § 2255 PETITIONS*

"A petitioner seeking § 2255 relief must allege . . .  as a threshold standard:  (1) an error of

constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact

or law that was so fundamental as to render the entire proceeding invalid."  *Gabrion v. United*

*States*, 43 F.4th 569, 578 (6th Cir. 2022) (quoting *Harris v. United States*, 19 F.4th 863, 866 (6th

Cir. 2021)) (internal quotation marks omitted), *cert. denied*, 143 S. Ct. 2667 (2023).

"An evidentiary hearing is required to determine the truth of a petitioner's claims when a

factual dispute arises in a § 2255 proceeding."  *Gardner v. United States*, 122 F.4th 254, 263 (6th

Cir. 2024) (internal quotation marks omitted), *reh'g denied*, 2025 WL 439740 (6th Cir. Jan. 15,

2025).  No hearing is required, however, "if the petitioner's allegations cannot be accepted as true

because they are contradicted by the record, inherently incredible, or conclusions rather than fact."

*Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*,

488 F.3d 325, 333 (6th Cir. 2007)).

If an evidentiary hearing is warranted, Rule 8(c) of the Rules Governing § 2255 Cases

requires appointment of counsel.  Otherwise, there is no absolute right to an attorney in

postconviction proceedings, in which most petitioners represent themselves.  *Garza v. Idaho*, 586

U.S. 232, 245-46 (2019) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  The district

court may, in its discretion, appoint counsel where factors including the legal or factual complexity

of the issues raised, the petitioner's ability to investigate and present his claims, the viability of his

claims, and other relevant factors favor such appointment.  *United States v. Augustin*, 16 F.4th 227,

4

233-34 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 1458 (2022); *Owen v. United States*, Case No.

1:20-cv-24, 2022 WL 17744049, at *4 (E.D. Tenn. Dec. 16, 2022), *appeal dismissed*, 2023 WL

3091576 (6th Cir. Mar. 14, 2023).

*ARGUMENTS OF THE PARTIES AND ANALYSIS*

Evidentiary Hearing and Appointment of Counsel.

At the outset, the Court will address the prisoner's requests for an evidentiary hearing and

appointment of counsel.  With respect to the former, the Court finds, for the reasons set forth in

this opinion, that Petitioner's factual arguments are conclusory or unsupported by the record.

Therefore, no evidentiary hearing is required.  As to the latter request, the issues raised in the

Petition are not legally or factually complex.  The arguments contained in Perry's filings, while

devoid of merit, are adequately presented and accompanied by numerous citations to caselaw.

Upon consideration, the Court finds that the relevant factors do not support an order appointing

counsel.  The undersigned will at this point proceed to the merits of the Petition.

Ineffective Assistance of Counsel.

Perry submits that FPD Griffin was ineffective by (1) "hoodwink[ing]" him into

proceeding with a change of plea hearing by convincing him that his custodial sentence would be

no more than forty-one months, knowing that his criminal history might subject him to an

enhancement (Claim 1); (2) failing to keep abreast of changes in the law regarding the

characterization of prior marijuana convictions as "controlled substance offenses" for sentencing

purposes (Claim 2), (3) failing to raise the marijuana issue before the district court at sentencing

(Claim 3); and (4) failing to file motions to suppress (Claim 4).

*Ineffective Assistance of Counsel Claims Generally*

The ineffective assistance of counsel constitutes an error of constitutional magnitude. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). It is not an easy claim to prove. Under the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), a criminal defendant's Sixth Amendment right to effective assistance is violated when "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant." *Gardner*, 122 F.4th at 258 (citing *Strickland*, 466 U.S. at 687). The right to counsel "applies to all 'critical' stages of the criminal proceedings[.]" *Carson v. United States*, 88 F.4th 633, 639 (6th Cir. 2023) (citing *Missouri v. Frye*, 566 U.S. 134, 140-44) (2012)), *reh'g and reh'g en banc denied*, 2024 WL 314326 (6th Cir. Jan. 26, 2024). "To demonstrate deficient performance, the petitioner must show that counsel's errors were 'so serious that counsel was not functioning as the counsel the Sixth Amendment guarantees.'" *Gardner*, 122 F.4th at 258 (quoting *Strickland*, 466 U.S. at 687) (some internal quotation marks omitted). That is, "counsel's representation [must have fallen] below an objective standard of reasonableness." *Neuhard v. United States*, 119 F.4th 1064, 1069 (6th Cir. 2024) (quoting *Strickland*, 466 U.S. at 687-88). To establish prejudice, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If a petitioner fails to bear his burden under either prong by a preponderance of the evidence, the court may dispose of the case without considering the other. *Id.* at 697; *Pough*, 442 F.3d at 964.

In analyzing a § 2255 petition, district courts are instructed to "make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Neuhard*,

119 F.4th at 1069 (quoting *Kendrick v. Parris*, 989 F.3d 459, 468 (6th Cir. 2021)) (internal

quotation marks omitted). "*Strickland* demands 'a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance,'" *id.* (quoting *Strickland*, 466 U.S. at

689), creating a "high bar" difficult to overcome, *Gardner*, 122 F.4th at 259 (citing *Padilla v.*

*Kentucky*, 559 U.S. 356, 371 (2010)).

*Claim 1*

The right to counsel extends to the plea-bargaining phase of a criminal proceeding. *Lafler*

*v. Cooper*, 566 U.S. 156, 162 (2012). At this stage, a defendant has the right to receive "accurate

advice regarding sentence exposure." *Gilbert v. United States*, 64 F.4th 763, 771 (6th Cir. 2023)

(citing *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (holding that a defendant has the

right to have his counsel "explain the sentencing exposure the defendant will face")).

> FPD Griffin's affidavit states in pertinent part:
>
> After several discussions, Mr. Perry expressed to Defense Counsel that he felt it
> was in his best interest to make an admission to the allegations and change his plea
> from Not Guilty to Guilty.
>
> After the decision was made, Mr. Perry and Defense Counsel discussed Mr. Perry's
> possible sentence range based on the United States Sentencing Guidelines.
>
> Based on information received from Mr. Perry, Defense Counsel believed that Mr.
> Perry only had one prior felony for a controlled substance offense.
>
> Defense Counsel did a preliminary guideline calculation based on this information
> and informed Mr. Perry of the preliminary guideline range.
>
> This calculation did not consider Mr. Perry being designated a Career Offender.
>
> The Presentence Report noted that Mr. Perry had additional felony convictions for
> controlled substance offenses, making Mr. Perry eligible to be considered a Career
> Offender.
>
> Defense Counsel met with Mr. Perry after receiving the PSR.

*        *        *

7

Prior to Mr. Perry's sentencing, Defense Counsel was given the opportunity to file objections to the presentence report including the Career Offender designation.

Defense Counsel made no objections.

(D.E. 9-1 ¶¶ 7-13, 15-16.).

Perry insists that his attorney was "extremely adamant" that he would receive a maximum sentence of forty-one months. (D.E. 1-1 at PageID 20.) He avers that Griffin was nonetheless aware of his 1990, 2012, and 2015 convictions based on (1) counsel's prior representation of Perry in the 15-10001 Case supervised release violation proceeding and (2) discovery in the form of an October 22, 2019, letter from the Government in the Underlying Case noting that "your client does have a criminal history." (D.E. 1-2 at PageID 36.) He points further to his own affidavit, attached as an exhibit to the Petition, in which he states:

> On 07/02/2020, Jawara Griffin visited me via SKYPE at West Tenn. Detention Facility. He informed me that [he] made a mistake on my criminal history worksheet and missed the "career offender." Also that I was facing a term of imprisonment of 151-188 months. . . .

(D.E. 1-2 ¶ 2.) However, nothing referenced by Petitioner, including his own affidavit, indicates that Griffin knew his client would be eligible for the career offender enhancement and, thus, a potentially longer sentence, until after he received the PSR.

Even if counsel's preliminary sentence calculation and alleged "promise" of a sentence of no more than forty-one months were deficient, Perry has failed to demonstrate prejudice. The Sixth Circuit has held that, "[w]hen an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016)). "Otherwise, the plea colloquy process would be rendered

8

meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood." *Id.*

In the change of plea colloquy in the Underlying Case, the Court informed Defendant that, if he had a prior felony drug conviction, his potential sentence on Count 1 could be not more than ten years' incarceration and, on Counts 2 and 3, not more than thirty years. Defendant affirmed under oath in open court that he understood the possible penalties involved, including those that could be imposed in the event he had prior felony drug convictions. The Court further advised that a presentence report would be prepared containing information regarding his prior criminal record and recommending a term of imprisonment, which the Court would consider, but not be bound by, in imposing sentence. Defendant acknowledged his understanding that the Court—and no one else—would determine his final sentence. Further, he admitted that the Government's information regarding his involvement in the charged offenses was basically correct, and that he was freely and voluntarily admitting his guilt. Thus, even if he believed he would be sentenced to no more than forty-one months' incarceration at the beginning of the change of plea hearing, he was disabused of that notion by the Court before he entered his plea. *See Mehtsentu v. United States*, Case No. 3:21-cv-00417, 2024 WL 3488248, at *8 (M.D. Tenn. July 19, 2024) ("even if counsel had failed to make it clear prior to the change of plea hearing the . . . potential sentence [defendant] faced, the plea colloquy by the court ensured that [defendant], indeed, understood the . . . potential sentence at the time he entered his plea"); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Since Perry has failed to establish ineffective assistance as to Claim 1, it is DENIED.

9

*Claims 2 and 3*

These claims are interrelated and will be considered in tandem.  The claims assert that FPD

Griffin acted deficiently in failing to make himself aware of changes in the law with respect to his

client's prior marijuana convictions and, as a result, failing to object to application of the career

offender enhancement.

A "controlled substance offense" is defined under the Guidelines as a federal or state

offense that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled

substance" or "the possession of a controlled substance . . . with intent to manufacture, import,

export, distribute, or dispense[.]"  U.S.S.G. § 4B1.2(b)(1).  This definition "refers to substances

whose possession and use are restricted by law through the mechanism of listing substances in a

schedule."  *United States v. Williams*, 850 F. App'x 393, 397 (6th Cir. 2021).  Prior to 2018,

hemp—cannabis with extremely low concentrations of tetrahydrocannabinol—was included in the

definition of "marijuana" under the Controlled Substances Act and was criminalized under both

federal and Tennessee law.  *United States v. Johnson*, No. 23-5753, 2024 WL 4648088, at *3 (6th

Cir. Nov. 1, 2024) *(*citing 21 U.S.C. § 802(16) (2018); Tenn. Code Ann. § 39-17-402(16) (2012)),

*cert. denied*, 2025 WL 76701 (2025).  On December 20, 2018, the Agriculture Improvement Act

of 2018 removed hemp from the federal schedule's listing of controlled substances.  *See* Pub. L.

No. 115-334, 132 Stat. 4490, 5018 (2018).  In April 2019, Tennessee followed suit.  *See* Tenn.

Code Ann. §§ 39-17-402, -403, -415; Tenn. Code Ann. § 43-27-101.  Consequently, at the time

Perry entered his guilty plea and was sentenced, hemp was not listed as a controlled substance

under either federal or state law.

Considering that the sentencing court "must presume that [a prior] conviction rested upon

nothing more than the least of the acts criminalized—here, possession of hemp—*see Williams*,

850 F. App'x at 397 (citing *United States v. Burris*, 912 F.3d 386, 406 (6th Cir.) (en banc))—

Petitioner could have argued that his 2012 and 2015 convictions for now-decriminalized hemp

should not be counted as controlled substance offenses for purposes of the career offender

enhancement.

Just such a challenge was brewing in the United States District Court for the Eastern

District of Tennessee.  On November 22, 2019, Tony Dewayne Williams was sentenced by District

Judge Travis M. McDonough for a § 922(g)(1) offense.  (*United States v. Williams*, Case No. 4:19-

cr-00009-TRM-CHS (E.D. Tenn.), D.E. 32.)  In calculating the appropriate Guidelines range,

Judge McDonough concluded that Williams's 2015 Tennessee marijuana conviction was a

controlled-substance felony.  *Williams v. United States*, 668 F. Supp. 3d 808, 811 (E.D. Tenn.

2023).  Williams appealed his sentence in December 2019, arguing in part that his prior conviction

could not be considered a controlled substance offense due to the delisting of hemp between the

2015 offense and his sentencing.  *Id.* at 811.  At that time, the issue was unsettled in this and other

circuits.  *See id.* at 813.

Perry relates in his affidavit that in approximately September 2020 during a visit with

Griffin to discuss the PSR, he asked counsel about his prior marijuana convictions and whether

"the *Williams* case" would help him.[3]  (D.E. 1-2 ¶ 3.)  *Williams* was then still pending before the

Sixth Circuit.  He recalls that his attorney replied that he "wasn't aware of the *Williams* case."

(*Id.*)  Griffin responds in his own affidavit, stating:

---

[3]Petitioner also declares in the affidavit that he asked his attorney about "Havis" (D.E. 1-2 ¶ 3), which the Court assumes refers to *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). However, the mere mention of the name of the case absent *some* effort at developed argument as to how Griffin's failure to object on *Havis* grounds allegedly amounted to ineffective assistance is insufficient to warrant the Court's consideration. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones.").

11

Mr. Perry and Counsel discussed several issues and cases related to controlled substances offense; however, Counsel does not remember discussing *United States v. Williams* as indicated in Mr. Perry's affidavit.

\*     \*     \*

Defense Counsel was unaware that there were cases pending that would potentially have an effect on the United States Sentencing Guideline determination of career offender.

\*     \*     \*

Defense Counsel did not independently research any other issues or cases regarding Mr. Perry's prior felony marijuana convictions from the State of Tennessee which resulted in his designation as a Career Offender.

Defense Counsel did not consider the impact of the removal of hemp from the federal definition of marijuana in 2018 on the categorical approach analysis to Mr. Perry's 2012 and 2015 prior Tennessee felony marijuana convictions.

(D.E. 9-1 ¶¶ 14, 17, 20, 21.)

The appellate court issued its unpublished, split decision in *Williams* on March 2021, five months after Perry's sentencing, with the majority concluding that the district court was "obligated to apply the version of the Guidelines, and the version of the controlled substance schedules, *in effect at the time of [the defendant's] [federal] sentencing*." *Williams*, 850 F. App'x at 401 (emphasis added). Accordingly, it appears that, under the majority decision, Petitioner's prior marijuana convictions would not have counted as controlled substance offenses for purposes of the enhancement.

Perry insists that FPD Griffin's failure to familiarize himself with the pending appeal and object to the enhancement in light of *Williams* constitutes ineffective assistance. However, the Constitution "guarantees a competent attorney, not a clairvoyant one[;] counsel is not ineffective for failing to predict the development of the law[.]" *Kimbrough v. United States*, 71 F.4th 468, 471-72 (6th Cir. 2023) (quoting *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010)). Rather,

"subsequent legal developments are relevant only if 'clearly foreshadowed' by existing decisions."

*Id.* (quoting *Thompson*, 598 F.3d at 288); *see also Snider v. United States*, 908 F.3d 183, 192 (6th

Cir. 2018) (same) (collecting cases).  Courts are cautioned that, "[b]ecause the Sixth Amendment

protects against only the most egregious of omissions, precedent will 'clearly foreshadow' a

change in law in 'rare' circumstances."  *Kimbrough*, 71 F.4th at 471-72 (citing *Luca v. O'Dea*,

179 F.3d 412, 420 (6th Cir. 1999)).  "The change must be so obvious that no 'reasonable' jurist or

attorney could fail to foresee it."  *Id.* at 472.

*Williams's* majority opinion was repudiated in 2022 by the Sixth Circuit in *United States

v. Clark*, 46 F.4th 404 (6th Cir. 2022), *cert. denied*, 144 S. Ct. 107 (2023), the first binding

precedent on the timing-of-conviction-versus-timing-of-sentencing issue in this circuit.  *Clark*

criticized the *Williams* majority for failing to follow the reasoning of the Supreme Court in its 2011

ruling in *McNeill v. United States*, 563 U.S. 816 (2011), which rejected the use of a time-of-

sentencing rule in deciding the closely related question of how a federal court should determine

the maximum sentence for a prior state drug offense under the Armed Career Criminal Act.  *See

Clark*, 46 F.4th at 414; *see also United States v. Harbin*, 56 F.4th 843, 847-48 (10th Cir. 2022)

(explaining interplay between *Williams* and *Clark*).  In fashioning its decision, *McNeill* favorably

cited to the Sixth Circuit's 2003 finding in *Mallett v. United States*, 334 F.3d 491 (6th Cir. 2003),

that the language of the Guidelines "strongly" suggested that classification of an offense as a

controlled substance offense "should be determined as of the date that the defendant's guilt of that

offense was established, not as of the time of his federal sentencing."  *Mallett*, 334 F.3d at 498.

*Clark* held that, under *McNeill's* logic, "courts must define the term ['controlled substance'] as it

exists in the Guidelines at the time of federal sentencing by looking backward to what was

considered a 'controlled substance' at the time the defendant received the prior conviction that

triggers the enhancement." *Id.* at 411.  Circuit Judge Deborah L. Cook's concurrence in *Williams*

tracked the same *McNeill/Mallett* line of reasoning later articulated in *Clark.  Williams*, 850 F.

App'x at 402-06 (Cook, J., concurring in the judgment) (noting that, in reaching its determination,

the majority eschewed the approach set forth in *McNeill* and *Mallett*).

        All this is to say that the outcome of *Williams* seems far from "clearly foreshadowed."

Indeed, Williams's § 2255 petition alleging ineffective assistance of counsel failed in part for this

very reason.  There, Judge McDonough observed that an answer to the question of whether a

controlled substance offense is governed by the law in effect at the time of the conviction or the

time of sentencing under the Guidelines was not clearly foreshadowed, but was instead subject to

reasonable debate, as evidenced by the subsequent circuit split, of which *Clark* was a part.

*Williams*, 668 F. Supp. 3d at 814-15 (comparing *Clark* to *United States v. Bautista*, 989 F.3d 698,

703 (9th Cir. 2021) ("it would be illogical to conclude that federal sentencing law attaches

'culpability and dangerousness' to an act that, at the time of sentencing, Congress has concluded

is not culpable and dangerous").  Judge McDonough also deemed it "far from 'clear'" whether a

challenge to the use of Williams's 2015 marijuana conviction as a controlled substance offense

based on the delisting of hemp would have been successful.  *Id.* at 815-16.  Because he failed to

establish that the majority opinion in *Williams* was "clearly foreshadowed" at the time of

sentencing, or that the result of the proceeding would have been different, Williams fell short of

demonstrating ineffective assistance.  *Id.* at 815.

        A similar result in appropriate here.  When Perry's sentencing occurred in the Underlying

Case, the Sixth Circuit had not addressed the timing issue, and, indeed, appeared to suggest a

different course.  *See Mallett*.  Nor had any other federal circuit court considered it.  The inmate

has identified no caselaw from any court that clearly foreshadowed the *Williams* majority's

conclusion.  The Constitution does not require that FPD Griffin be able to predict the future.  His

representation must only have been above an objective standard of reasonableness.  *See Neuhard*,

119 F.4th at 1069.  Petitioner has failed to show otherwise.

Moreover, prejudice in this context requires a showing that "the likelihood of a different

result was substantial, not just conceivable."  *Bullard v. United States*, 937 F.3d 654, 662 (6th Cir.

2019) (quoting *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)) (cleaned up).  This standard

is a demanding one.  *Id.* (citing *Storey*, 657 F.3d at 379).  Here, considering the unsettled nature

of the caselaw at the time of sentencing, it is unlikely that this Court would have sustained an

objection to application of the enhancement based on the issue presented in *Williams* had counsel

proffered it.  *See id.* at 663 ("while the district court *might* have decided to drop the enhancement

had Bullard objected—that is not enough on collateral review").

Claims 2 and 3 are DENIED.

*Claim 4*

In his final claim, the inmate submits that his attorney was ineffective by failing to file a

motion to suppress evidence in the Underlying Case.  However, this claim was waived by

Petitioner's voluntary guilty plea.  *See United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir.

2001) ("[Defendant's] claims of ineffective assistance do not attack the voluntary or intelligent

nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier

alleged constitutional deprivations.  His claims have therefore been waived by his subsequent

guilty plea."); *Humphrey v. United States*, Case No. 1:23-cv-1150, 2024 WL 4986214, at *7 (W.D.

Mich. Dec. 5, 2024) (by pleading guilty, defendant waived ineffective-assistance-of-counsel claim

based on a failure to file a motion to suppress evidence.)

15

Furthermore, Petitioner has failed to establish that a Fourth Amendment challenge would have been meritorious. The inmate admitted at the change of plea hearing that he received the *Miranda* warnings, agreed to speak with officers, signed a written waiver of rights, and provided them with an inventory of the illegal drugs contained in the backpack, which he also admitted belonged to him. He has not maintained that the waiver of his *Miranda* rights was anything other than voluntary, knowing, and intelligent. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (to be considered valid, rights waiver must be made "voluntarily, knowingly, and intelligently"). Therefore, law enforcement had probable cause to believe the backpack contained evidence of a crime. *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002) (probable cause to perform a search exists where there is "a fair probability that contraband or evidence of a crime will be found in a particular place"). Counsel cannot be faulted for failing to raise meritless arguments.

Claim 4 is DENIED.

### *APPEAL ISSUES*

Title 28 U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). No § 2255 petitioner may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

16

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable."  *Id.*; *see also id.* ("Again, a certificate is improper if any outcome-determinative issue is not reasonably debatable.").  There can be no question that the issues raised in the Petition are meritless for the reasons previously stated.  The Court therefore DENIES a COA.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *Kincade*, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a COA, the Court also determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

<em>CONCLUSION</em>

Based on the foregoing, the Petition is DENIED as to all grounds set forth therein. The Court also DENIES a certificate of appealability, CERTIFIES that an appeal would not be taken in good faith, and DENIES leave to proceed in forma pauperis on appeal.

IT IS SO ORDERED this 10th day of March 2025.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE